# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: September 23, 2026

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| SUSAN SCRICCO, | * | |
| | * | |
| Petitioner, | * | No. 23-1190V |
| | * | |
| v. | * | Special Master Young |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.
*Margaret Armstrong*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ENTITLEMENT[1]

On July 31, 2023, Susan Scricco ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018). Pet., ECF No. 1. Petitioner alleged that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as the result of an influenza ("flu") vaccine administered on October 19, 2021. *Id.* at 1. Respondent argued against compensation, asserting that Petitioner could not establish a SIRVA Table claim. Resp't's Rep., ECF No. 21. Although Petitioner did not allege an alternative causation-in-fact claim, Respondent asserted that Petitioner failed to establish a prima facie case for causation-in-fact as well. *Id.*

A careful analysis and weighing of all the evidence presented in this case in accordance with the applicable legal standards,[2] reveals that Petitioner has failed to satisfy the SIRVA Table criteria. Accordingly, Petitioner is not entitled to an award of compensation.

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the Decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding

## I. Procedural History

Petitioner filed her petition and medical records on July 31, 2023. Pet., Pet'r's Exs. 1–5, ECF No. 1. Petitioner filed additional medical records, a declaration, and a statement of completion between October 20, 2023, and January 5, 2024. Pet'r's Ex. 6, ECF No. 8; Pet'r's Exs. 7–9, ECF No. 10; ECF No. 11. On April 11, 2024, the case was assigned to the Special Processing Unit ("SPU"). ECF No. 14. Petitioner filed additional medical records on July 17, 2024. Pet'r's Ex. 10, ECF No. 20.

On August 26, 2024, Respondent filed his Rule 4(c) report, opposing compensation. Resp't's Rep. Specifically, Respondent argued that Petitioner had not satisfied the second and fourth criteria required to establish a Table SIRVA Claim. *Id.* at 12–13. Given these issues, on December 11, 2024, the Chief Special Master issued an Order to Show Cause as to why Petitioner's claim should not be dismissed and instructed her to file any additional evidence relating to Respondent's arguments against compensation. ECF No. 22 at 3. Between December 11, 2024, and February 7, 2025, Petitioner filed additional medical records and supporting evidence for her claim. Pet'r's Exs. 11–12, ECF No. 23; Pet'r's Exs. 13–14, ECF No. 24.

On February 7, 2025, Petitioner filed a motion for a ruling on the record. Pet'r's Mot., ECF No. 25. Respondent filed his response on April 8, 2025. Resp't's Response, ECF No. 26. Petitioner did not file an optional reply. Following the parties' briefing, on September 19, 2025, the Chief Special Master held a status conference where he encouraged the parties to informally settle the claim due to "the limited potential damages even if Petitioner prevails on entitlement." ECF No. 27 at 1. Between October 9, 2025, and October 30, 2025, in advance of the joint status report due on November 3, 2025, Petitioner filed additional medical records and witness statements. Pet'r's Exs. 15–17, ECF No. 28; Pet'r's Ex. 18, ECF No. 29; Pet'r's Exs. 19–20, ECF No. 30. *See also* ECF No. 27.

On November 3, 2025, the parties filed a joint status report that indicated Respondent was not open to settlement negotiations in this case. ECF No. 32. This case was subsequently assigned to my chambers on May 5, 2026. ECF No. 34. On July 31, 2026, I held a status conference to discuss any pending issues since its reassignment from SPU. Min. Entry, docketed July 31, 2026. Petitioner confirmed that she is asserting a Table claim. Petitioner chose not to file a reply brief following the status conference.

No further filings or status conferences have occurred in this case. This matter is now ripe for consideration.

## II. Medical History

Petitioner's prior medical history was significant for fractured ribs and a fractured right wrist in 2019, neck and joint pain, anxiety, Lyme disease, hyperlipidemia, cervical spondylosis,

---

certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

and gastroesophageal reflux disease. *See generally* Pet'r's Exs. 2, 9. Petitioner also received the Johnson & Johnson COVID-19 vaccine on September 1, 2021. Pet'r's Ex. 12 at 3.

Petitioner received the subject flu vaccine in her right deltoid from a Price Chopper pharmacy in Shrewsbury, Massachusetts, on October 19, 2021. Pet'r's Ex. 1 at 3. At the time of the vaccine, Petitioner worked as a nurse and realtor. Pet'r's Ex. 2 at 290.

The following day, on October 20, 2021, Petitioner called the office of her primary care provider ("PCP"), Dr. L. Rebecca Spanagel, to request a note excusing her from work as "she had her flu shot at [P]rice [C]hopper yesterday and is now sick." Pet'r's Ex. 12 at 17. Petitioner reported experiencing "[w]heezing and [b]ody [a]ches" and requested the note be kept on file so she could be exempt from further flu vaccinations. *Id.* Petitioner requested that the letter explain her absence from work "due to [s]ide effects of the [f]lu [v]accine" and reported experiencing the same symptoms when she received the flu vaccine last year. *Id.* Petitioner later called Dr. Spanagel's office on the same day to request the addition of a Lyme Titer test to her lab work. *Id.* at 18. Dr. Spanagel made a progress note that said "Ly" later that same day. Pet'r's Ex. 4 at 20.

Petitioner's Lyme disease testing was collected on December 2, 2021. Pet'r's Ex. 3 at 28–44. Her PCP left a voicemail for her on December 6, 2021, explaining that her labs "look good" but that "she was certainly exposed [to Lyme disease] at some point," and requested she call the office back. Pet'r's Ex. 12 at 20. Petitioner returned the call on December 7, 2021, and reported that "she ha[d] body aches all over especially in her right arm. She sa[id] her joints [were] achy also." *Id.* Petitioner questioned whether she should be put on doxycycline and/or see a rheumatologist. *Id.* Dr. Spanagel made a note that she would start 100mg of doxycycline and placed a rheumatology referral. Pet'r's Ex. 4 at 20.

On December 18, 2021, Petitioner presented to an orthopedic urgent care facility and was seen by physician's assistant ("PA") Christopher Leahy. Pet'r's Ex. 2 at 120. Petitioner complained of "upper arm pain tha[t] she's had for [six] weeks." *Id.* PA Leahy described Petitioner's shoulder pain as "atraumatic" and that Petitioner "denie[d] any particular injury or provocative activity to explain the symptoms that [were] constant in nature." *Id.* Her symptoms were primarily located in the lateral aspect of the upper arm, and she had difficulty with abduction, overhead motion, and reaching behind her. *Id.* On examination Petitioner displayed limited range of motion in all directions and had a positive Neer test, Hawkins sign, empty can test, Speeds test, and Whipple test. *Id.* at 121. She had a negative bearhug test and liftoff test. *Id.* PA Leahy diagnosed Petitioner with impingement syndrome of her right shoulder and noted he "had a discussion regarding the most likely cause of her symptoms," though he did not explain these potential causes in his notes. *Id.* PA Leahy prescribed Celebrex to Petitioner and suggested she try to rest and ice her shoulder and follow-up in two to three weeks. *Id.*

On December 21, 2021, an internal note at Petitioner's counsel's law firm was made regarding Petitioner's claim.[3] Pet'r's Ex. 13 at 1; *see also* Pet'r's Mot. at 2. The note, which appeared to be written in the first-person by Petitioner, stated the following:

---

[3] Petitioner presented this exhibit as an "initial email" to her current counsel. Pet'r's Mot. at 2. However, the document is not an email; rather, it appears to be an internal record created by Petitioner's counsel's law firm, Muller Brazil. A

**Treatment Summary**

> So I had the vaccine on the 19th right to follow I started having some discomfort and now it's pretty uncomfortable painful and on going. I told the provider [I] thought I had the flu vaccine and asked if I could be from that and he said yes and there's no injury that I've had since the pain started. It was also given by a pharmacist at a grocery store. I have never experienced anything like this. October 19th went to doctor 12/18 – orthopedist bursa inflamed – cold compresses and Celebrex for 10 [] days follow up in [three] weeks.

Pet'r's Ex. 13 at 1.

Petitioner returned to PA Leahy on January 28, 2022, with continued complaints of right shoulder pain and limited range of motion. Pet'r's Ex. 2 at 114. Petitioner's physical examination showed mild improvements but still revealed pain and reduced range of motion. *Id.* PA Leahy opined that Petitioner's clinical findings "seem to be more consistent with adhesive capsulitis" and recommended Petitioner start physical therapy ("PT") and receive a cortisone injection. *Id.*

Petitioner called PA Leahy's office on March 2, 2022, "requesting a return call" to discuss "work adjustments" with PA Leahy. Pet'r's Ex. 19 at 213. PA Leahy documented his return call on March 3, 2022, stating that he addressed Petitioner's "initial questions." *Id.*

Petitioner began PT on March 9, 2022, at Southboro Rehabilitation. Pet'r's Ex. 2 at 101. The provider noted the onset of Petitioner's right shoulder pain to be "October 2021 after a flu shot at Price Ch[o]pper." *Id.* at 102. The provider further noted that Petitioner had seen PA Leahy "for right shoulder pain in mid Dec[ember] 2021. She had had it for about [six] weeks at that time without injury. She has lost motion. Hard to sleep." *Id.* Petitioner rated her current pain at a 4/10, though she noted it had been a 10/10 within the past week. *Id.* Petitioner was prescribed a rehabilitation plan comprising of 16 sessions. *Id.* at 105. Petitioner scheduled an appointment with Physical Therapist Assistant ("PTA") Katherine Osborne at Southboro Rehabilitation for March 16, 2022. Pet'r's Ex. 19 at 196–97. However, Petitioner cancelled on that day because she was "called into work." *Id.* at 195. Petitioner also scheduled an appointment with PTA Osborne on March 23, 2022, but cancelled on that day as well. *Id.* at 192–93. Southboro Rehabilitation noted that "[Petitioner] has more scheduled." *Id.* at 192.

On March 25, 2022, Petitioner returned to PA Leahy with continued complaints of right shoulder discomfort. Pet'r's Ex. 2 at 90. On examination, Petitioner displayed mild improvement in her range of motion, and she declined a cortisone injection in favor of further PT. *Id.* Petitioner also reported to PA Leahy that she was currently working remotely and hoped to return to work on a short-term basis soon. *Id.* Petitioner sought PA Leahy's assistance in achieving a modified work schedule so that she could continue to attend PT and manage her shoulder pain upon returning to work. *Id.* She indicated to PA Leahy that she had mailed paperwork to his office in anticipation of the visit. *Id.* PA Leahy completed the form, titled Health Care Provider Certification for

---

hyperlink contained at the bottom of the document directs to a log-in page for Muller Brazil's internal file system. Pet'r's Ex. 13.

Employee's Own Condition, on March 25, 2022. Pet'r's Ex. 8 at 176–78. On the form, he indicated that Petitioner's condition of adhesive capsulitis began in October 2021. *Id.* at 177.

On April 3, 2022, Petitioner sent a message to PA Leahy's office, asking if her paperwork was ready. Pet'r's Ex. 19 at 186. On April 4, 2022, PA Leahy's office responded that the paperwork was completed on March 25, 2022, and that Petitioner "should have an unread mychart in [her] messages . . . regarding this." *Id.* Petitioner messaged the office again on April 4, 2022, stating her disappointment that she did not receive a phone call when the paperwork was ready. *Id.* at 185.

In April and May of 2022, Petitioner attended PT. Pet'r's Ex. 2 at 43, 67, 72. She completed sessions on April 7, 2022, April 14, 2022, and May 12, 2022. *Id.* Petitioner had also been scheduled for appointments on April 25, 2022, and May 6, 2022, with PTA Osborne. Pet'r's Ex. 19 at 162, 148. However, Southboro Rehabilitation marked Petitioner as a "No Show" in corresponding documentation on those days. *Id.* at 162, 157.

On April 7, 2022, Petitioner reported to PT Mary Bruce that her shoulder felt "[v]ery painful in the morning." Pet'r's Ex. 19 at 171. PT Bruce's assessment noted that "[c]apsule is not that tight." *Id.* at 172. On April 14, 2022, Petitioner reported to PT Bruce that her shoulder felt "sore still." *Id.* at 166. PT Bruce described Petitioner's shoulder as "[l]ooser after." *Id.* at 167.

On April 20, 2022, Dr. Spanagel authored a letter to postpone Petitioner's COVID-19 booster "due to frozen shoulder in the right arm after receiving the flu vaccine in the fall."[4] Pet'r's Ex. 14 at 1. Dr. Spanagel explained that Petitioner had received the Johnson & Johnson COVID-19 vaccine in September of 2021, "and then had the flu shot about a month after[;] unfortunately she [] had reaction to the flu vaccine possibl[y] secondary to the placement that resulted in a lot of discomfort in the right shoulder that is now being treated as a frozen shoulder." *Id.* Petitioner later received the Pfizer COVID-19 vaccine in her left deltoid on May 24, 2022, although she later reported to Dr. Spanagel's office on May 26, 2022, that she "did not want to get the vaccine [but] due to work she did." Pet'r's Ex. 4 at 8; Pet'r's Ex. 12 at 27.

On May 6, 2022, Petitioner called Reliant Medical Group to request edits to question six of her work-schedule modification paperwork. Pet'r's Ex. 2 at 57. Petitioner specifically requested "clarity on how long patient will be out of work." *Id.* On May 8, 2022, Petitioner sent PA Leahy a message requesting edits to the same question in her paperwork. *Id.* at 51. She told PA Leahy that "Sedgwick [Claims Management Services] is saying question [six] on the form needs to be clearer and refaxed." *Id.*; *see also* Pet'r's Ex. 8 at 1. On May 12, 2022, Petitioner reported in her PT session that she "fe[lt] better with the exercises," but her "mid brachium still hurt[]" and "[g]etting dressed [was] still difficult." Pet'r's Ex. 19 at 142.

On May 26, 2022, Petitioner called her PCP to report that she received a COVID-19 vaccine and had since developed new symptoms of feeling fatigued with swollen lymph nodes after the vaccination. Pet'r's Ex. 12 at 27. "She report[ed] she had a fever yesterday[,] low grade today. She also can't move her arm." *Id.* An appointment was scheduled with internal medicine specialist Dr. Durga Bathini, who saw Petitioner the next day on May 27, 2022. *Id.* at 29. Petitioner

[4] Petitioner's Motion for Ruling on the Record states that Petitioner sought the letter "for a medical exemption [for the] COVID booster." Pet'r's Mot. at 11.

reported experiencing a fever, swollen glands, and "right arm pain after having COVID-19 vaccine (Pfizer) on 5/24/2022," and had missed three days of work. *Id.* Dr. Bathini characterized Petitioner's physical examination as "benign" and recommended she continue to take acetaminophen and ibuprofen. *Id.* 31. Petitioner called her PCP's office on June 1, 2022, requesting an extension of her sick leave because her "[a]rm [was] still sore" and she did not plan to go to work for the rest of the week. *Id.* at 37. Petitioner stated that she intended to go to PT to "loosen it up a bit." *Id.*

Petitioner cancelled her PT appointments on June 3, 2022, June 14, 2022, and June 23, 2022. Pet'r's Ex. 2 at 35, 37, 40. Due to these three missed appointments, described as two last-minute cancellations and one no-show, Petitioner was notified that her PT plan had been terminated on June 23, 2022.[5] *Id.* at 35.

On June 23, 2022, Petitioner called PA Leahy's office to request an extension of her modified work schedule for an additional three months. Pet'r's Ex. 2 at 29. Petitioner stated that she felt her arm was not improving with PT and that working for longer than six hours affected her arm. *Id.* PA Leahy noted, after the call, that he had not seen Petitioner for three months and that she had only attended three out of eight PT appointments since her last visit on March 25, 2022. *Id.* PA Leahy recommended that Petitioner complete a follow-up office visit before any extension of her paperwork. *Id.*

On June 25, 2022, Petitioner was contacted by Milford Rehabilitation via a patient messaging system. Pet'r's Ex. 2 at 26. Milford Rehabilitation indicated Petitioner had been newly referred and asked if she wanted to schedule an appointment to begin PT. *Id.* Moreover, Southboro Rehabilitation sent a letter to Petitioner on June 27, 2022, stating that Southboro had been unable to reach her by phone and that she needed to call to schedule an appointment. *Id.* at 24. No further records for PT were filed.

On July 12, 2022, Petitioner returned to PA Leahy's office and reported "continued discomfort involving her right shoulder with limitations in motion." Pet'r's Ex. 2 at 13. However, Petitioner reported that she had decided to stop PT and that her symptoms were responding to her home exercise program. *Id.* On examination, Petitioner showed limitations to her range of motion. *Id.* PA Leahy's diagnosis remained as right shoulder adhesive capsulitis, and he explained that her clinical findings demonstrated intact motion of the glenohumeral joint during her "passive arc of motion." *Id.* at 14. PA Leahy suggested a Cortisol injection again, but Petitioner deferred; however, she agreed to follow up in three months. *Id.* PA Leahy extended Petitioner's work limitations for another three months. *Id.*

The same day, Petitioner underwent an X-ray of her right shoulder, which showed "[p]eriarticular erosions involving the greater tuberosity." Pet'r's Ex. 2 at 17. The radiologist noted that such findings could be seen in inflammatory arthritis. *Id.*

On September 6, 2022, Petitioner returned to Dr. Spanagel for a routine physical examination, as well as a follow-up regarding her "history of borderline hypertension, mild

---

[5] Prior to June of 2022, Petitioner also cancelled four PT appointments between March and May of 2022. Pet'r's Ex. 19 at 157, 162, 192, 195 (two last-minute cancellations and two no-shows).

anxiety, shoulder pain after COVID-vaccine, sore throat and other issues." Pet'r's Ex. 3 at 105. Dr. Spanagel noted that Petitioner felt "most concerned" about her joint pain. *Id.* at 106. Petitioner had specifically reported shoulder pain after the COVID vaccine she received in May 2022. *Id.* Upon examination, Dr. Spanagel found decreased range of motion in Petitioner's right shoulder with tenderness to palpation. *Id.* at 109. Additionally, Petitioner reported "diffuse joint aching" and that she "wonder[ed] if she could have something like chronic Lyme's [given] that she had Lyme in the past." *Id.* at 108. Dr. Spanagel described Petitioner's symptoms as positive for arthralgias and knee pain but negative for joint swelling. *Id.* Due to Petitioner's "[m]ultiple joint pain," Dr. Spanagel ordered labs for Lyme serology, recommended that Petitioner obtain an X-ray of her left knee, and referred Petitioner to rheumatology. *Id.* at 105.

On September 22, 2022, Petitioner cancelled an upcoming appointment with PA Leahy scheduled for October 13, 2022. Pet'r's Ex. 7 at 57.

Petitioner returned to PA Leahy on November 3, 2022, with "notable improvement of her right shoulder discomfort and motion." Pet'r's Ex. 7 at 53. PA Leahy noted the adhesive capsulitis as "resolved" and described that "[Petitioner] anticipate[s] the ability to return to her full work schedule by the end of the year." *Id.* at 53–54. PA Leahy referred Petitioner to Southboro Rehabilitation for continued PT and recommended a follow-up appointment with his office in eight weeks. *Id.* at 54.

On December 31, 2022, Petitioner cancelled an upcoming appointment with PA Leahy scheduled for January 5, 2023. Pet'r's Ex. 7 at 36.

On January 4, 2023, Petitioner presented to Dr. Hung Trinh, a rheumatologist, for evaluation of a positive Lyme test and joint pain. Pet'r's Ex. 7 at 38–39. Petitioner explained that she had received a positive Lyme test in December of 2021 and had taken three weeks of doxycycline. *Id.* at 39. Dr. Trinh also noted that Petitioner completed additional labs in September of 2022 and that Petitioner remained concerned at that time about Lyme disease. *Id.* In addition, Petitioner described having periodic arthralgias primarily in both of her knees for several months. *Id.* On examination, Petitioner showed no musculoskeletal defects; in particular, her shoulders were noted as "nontender [with] good [range of motion]." *Id.* at 40. Dr. Trinh also reviewed Petitioner's labs and concluded that "she d[id] not have symptoms or findings suggested for Lyme disease/arthritis." *Id.* at 43. Dr. Trinh acknowledged the possibility that Petitioner had Lyme disease in the past but noted that her positive bands may also be false positives. *Id.* Dr. Trinh advised Petitioner to return if her symptoms worsened. *Id.*

Petitioner returned to Dr. Spanagel on September 26, 2023, for an annual physical and reported a rib injury. Pet'r's Ex. 12 at 76–77. Dr. Spanagel assessed Petitioner as positive for arthralgias but negative for joint swelling. *Id.* at 80. She wrote that Petitioner "has noticed diffuse joint aching [and] she [was] wondering if she could have something like chronic Lyme's [as] she has had Lyme in the past." *Id.* However, Dr. Spanagel did not find "evidence of chronic Lyme" and observed that "her joints seem[ed] to be improved this year." *Id.* at 76. Dr. Spanagel also observed decreased range of motion in Petitioner's right shoulder with some tenderness to palpation. *Id.* at 81. She noted that Petitioner "may have [a] flu vaccine allergy" and planned to refer Petitioner to an allergist before her next flu shot. *Id.* at 77.

On October 6, 2023, Petitioner called Dr. Spanagel's office to request a work-schedule modification letter due to a broken rib on her right side. Pet'r's Ex. 10 at 8. The office noted that Petitioner "gives vaccines to children and [i]s after [sic] of being kicked by a scared child." *Id.* Petitioner requested that Dr. Spanagel modify her schedule from eight-hour shifts to "[four hours] at a time and also can't give vaccines to patient[s] between the ages of [two and ten]." *Id.*

On December 4, 2023, Petitioner sent a message to Dr. Spanagel, informing her that she was unable to schedule an allergy appointment. Pet'r's Ex. 10 at 10. Petitioner requested a letter from Dr. Spanagel that would describe her allergy and the delay she experienced in consulting with an allergist. *Id.* Dr. Spanagel agreed to write the letter on the same day. *Id.* Petitioner later messaged Dr. Spanagel on January 3, 2024, noting that she had scheduled an allergy appointment for April.[6] *Id.* at 19.

On March 28, 2024, Petitioner visited Dr. Spanagel for a follow-up appointment regarding her history of sinusitis, joint pain, hyperlipemia, borderline blood pressure, and other issues. Pet'r's Ex. 12 at 99. Dr. Spanagel described Petitioner's joint pain as "manageable" and "not seem[ing] worse." *Id.* at 98.

On July 9, 2024, Petitioner called Dr. Spanagel requesting records of phone communications from July of 2023 to July of 2024. Pet'r's Ex. 10 at 24. In her record of the conversation, Dr. Spanagel noted "this is secondary to issues around frozen shoulder that she developed after vaccination in 2021. While that is better[,] she is still very limited and does not receive other vaccines." *Id.*

On October 10, 2024, Petitioner returned to Dr. Spanagel for an annual physical. Pet'r's Ex. 12 at 137. Petitioner declined the flu and COVID vaccines. *Id.* Dr. Spanagel noted that Petitioner "had a pretty severe reaction to the flu shot in the past, requiring her inhaler." *Id.* at 140. Dr. Spanagel also reported that she "discussed this today [with Petitioner]" and that "[Petitioner should meet with allergy before getting another flu shot."[7] *Id.*

No further medical records were filed related to pain or treatment in Petitioner's shoulder.

## III. Declarations

### A. Petitioner's Declaration

Petitioner executed a declaration on October 16, 2023. Pet'r's Ex. 6. Prior to vaccination, Petitioner experienced a wrist injury in 2019 that required surgical repair. *Id.* at ¶ 11.

During the vaccine appointment on October 19, 2021, Petitioner observed the pharmacist "seemed hurried" as she administered the vaccine. Pet'r's Ex. 6 at ¶ 3. Petitioner described feeling "slightly short of breath and wheezy" on the night of the appointment, prompting her to use her inhaler. *Id.* at ¶ 4. She also experienced "pain and some throbbing" at the injection site, which she

[6] No record of this allergy appointment was filed.
[7] Dr. Spanagel did not reference any recent allergy appointments attended by Petitioner. *See supra* note 6.

treated with Ibuprofen and cold compresses. *Id.* at ¶ 4. She also cancelled her husband's birthday dinner that night. *Id.* Petitioner recounted calling her doctor to explain her symptoms and convey that she "did not want to get any [] more [flu] vaccines." *Id.*

Petitioner missed work on October 20, 2021, due to the continued soreness over her injection site and "an increased pressure feeling over the area." Pet'r's Ex. 6 at ¶ 5. Her symptoms were "notably worsening" on that day. *Id.* However, Petitioner stated her preference to avoid scheduling doctors' appointments "unless absolutely necessary." *Id.* at ¶ 6. Accordingly, she continued using Motrin and compresses to address her symptoms. *Id.*

Petitioner's peers suggested she visit an urgent care specializing in orthopedics. Pet'r's Ex. 6 at ¶ 7. Petitioner attended the appointment on December 18, 2021, to see PA Leahy. *Id.*; Pet'r's Ex. 2 at 120. She noted to PA Leahy that she "had no recall of an injury to [her] right arm . . ., although [she] had a vaccination in [her] right arm." Pet'r's Ex. 6 at ¶ 7. He prescribed Celebrex, adjusted Petitioner's work hours, and ordered PT for Petitioner. *Id.*

Petitioner experienced professional hardships after receiving the vaccine, including an inability to "assist the provider with suturing," difficulty "reach[ing] up to the med[icine] cabinet to get medications," and embarrassment to explain her injury to others. Pet'r's Ex. 6 at ¶¶ 8–9. Prior to the vaccination, she had worked 12-hour shifts, and after the vaccination, she worked reduced six-hour shifts. *Id.* at ¶ 8.

Petitioner also experienced lifestyle changes after receiving the vaccine, noting that she became "a changed person and had so much pain" within six weeks of the injection. Pet'r's Ex. 6 at ¶ 10. She required assistance with daily tasks, including dressing and washing, and hired a housekeeper to assist with cleaning. *Id.*

Petitioner lost work hours and wages used for her daughter's tuition and experienced "immense stress" as her husband was also retiring during that time period. Pet'r's Ex. 6 at ¶ 12. She asserted that "nothing else happened" that would explain the right shoulder injury. *Id.* at ¶ 13.

### B. Statement of Ms. Stacy Rigiero

Petitioner submitted a statement from Ms. Stacy Rigiero, her longtime colleague.[8] Ms. Rigiero recalled encouraging Petitioner, in December of 2021, to seek medical care for her shoulder pain. Pet'r's Ex. 15 at 1.

### C. Statement of Mr. John Scricco

Petitioner filed remarks from her husband, Mr. John Scricco. Pet'r's Ex. 16. Mr. Scricco executed his statement on October 3, 2025. *Id.* at 1. He reported many challenges of daily living that Petitioner referenced in her declaration. *See id.*; *see also* Pet'r's Ex. 6. Mr. Scricco added "toileting" and "stir[ring] food" as activities that had required his assistance. Pet'r's Ex. 16 at 1. He also explained how Petitioner "couldn't exercise" and "would cry a lot." *Id.* He cited his own

---

[8] Ms. Rigiero's statement does not contain a date or signature of execution. *See* Pet'r's Ex. 15. *See also* ECF No. 28 (updated exhibit list missing date of execution for Exhibit 15).

difficulty sleeping, due to Petitioner's discomfort in bed following her vaccine. *Id.* Mr. Scricco stated "it was very upsetting" to witness Petitioner's health challenges and reiterated the financial stress resulting from Petitioner's reduced work hours. *Id.*

**D. Statement of Ms. Isabella Scricco**

Ms. Isabella Scricco, one of Petitioner's daughters, executed another statement in this case.[9] Pet'r's Ex. 17. She recalled that Petitioner "continued her demanding schedule as a nurse" to support Ms. Scricco's education. *Id.* at 1. Ms. Scricco explained that Petitioner "prioritized her work and others' needs over her own health," only receiving care for her shoulder "on a day off" in December of 2021. *Id.* Ms. Scricco characterized Petitioner's recovery process as "extensive, requiring a prolonged period of treatment before she regained full functionality and relief from the pain in her arm." *Id.*

**E. Statement of Ms. Arianna Scricco**

Petitioner also submitted a statement from her adult daughter, Ms. Arianna Scricco, dated October 1, 2025. Pet'r's Ex 18. Ms. Scricco referenced Petitioner's condition as "frozen shoulder." *Id.* at 1. Like Mr. Scricco's statement, Ms. Scricco listed the physical and emotional challenges that Petitioner experienced from her shoulder pain. *Id.*

## IV. Parties' Contentions

**A. Petitioner's Brief**

Petitioner asserts a Table SIRVA claim for her vaccination on October 19, 2021. Pet'r's Mot. at 7. She first argues her shoulder injury is associated with the flu vaccine because she "did not have any history of right shoulder pain or dysfunction" before the vaccination. *Id.* Based on this fact, Petitioner also argues she has met the first element of a SIRVA Table claim:[10] no history of injuries to the vaccinated shoulder.

Petitioner next addresses the second QAI: the 48-hour onset of symptoms after the vaccine administration. Petr's Mot. at 8. She relies primarily on her declaration to explain the timeline of events after the vaccination. *Id.* at 8–9; *see also* Pet'r's Ex. 6. She cites throbbing pain "immediately after" the vaccination that persisted "[i]n the weeks thereafter." Pet'r's Mot. at 8–9 (citing Pet'r's Ex. 6 at ¶ 4). Petitioner acknowledges that her first visit for the shoulder pain, dated December 18, 2021, "suggest[s] an onset outside of the Table timeframe." *Id.* at 9. However, Petitioner claims this late onset date "is an error in her medical records." *Id.* To show such error, Petitioner references her communications with the law firm she retained. *Id.* She summarizes the appointment to her attorney on December 21, 2021, including her question to PA Leahy about whether the vaccine could have caused her shoulder pain. *Id.* Petitioner cites two additional documents to support her claim of onset in October: insurance paperwork, where PA Leahy listed

[9] Ms. Scricco's statement contains a signature but no date of execution. *See* Pet'r's Ex. 17. *See also* ECF No. 28 (updated exhibit list missing date of execution for Exhibit 17).

[10] These elements are derived from the Qualifications and Aids to Interpretation ("QAIs") for SIRVA claims, listed in the vaccine regulations. 42 C.F.R. § 100.3(c)(10).

Petitioner's onset as "10/2021," and Southboro Rehabilitation records, which listed Petitioner's onset as "October 2021 after a flu shot." *Id.*

Like her argument for the first QAI, Petitioner summarizes her medical records to address the third QAI. Pet'r's Mot. at 10. She indicates "there is no evidence of an injury extending beyond Petitioner's right shoulder." *Id.*

In response to the fourth QAI, Petitioner disputes any other condition that could explain, alternatively, her symptoms of shoulder pain. Pet'r's Mot. at 10. Petitioner claims there is "no definite proof" that she suffered from Lyme disease, because a rheumatologist described her past lab results as "borderline" and potential "false-positive[s]." *Id.* (citing Pet'r's Ex. 7 at 38). Petitioner also relies on a letter from her PCP to show the vaccine alone caused her shoulder pain. *Id.* at 11. Her PCP authored the letter for the purpose of "medical exemption" from the COVID booster. *Id.* In it, she described Petitioner's "reaction to the flu vaccine possibly secondary to the placement that resulted in a lot of discomfort in the right shoulder." *Id.* (citing Pet'r's Ex. 14).

Lastly, Petitioner states she has met the Vaccine Act's six-month severity requirement because she presented "preponderant evidence" of her injury's "residual effects." Pet'r's Mot. at 11–12. She also notes that Respondent has not contested the severity requirement in this case. *Id.* at 12.

### B. Respondent's Brief

Respondent does not contest the first and third elements of Petitioner's Table claim. Resp't's Response at 14. Instead, he focuses on the second and fourth QAIs: 48-hour onset and additional medical conditions. *Id.*

#### 1. 48-Hour Onset

To contest the onset window, Respondent first asserts that Petitioner's medical record after vaccination is inconsistent with SIRVA symptoms. Resp't's Response at 14. Petitioner called her PCP on October 20, 2021, but Respondent notes she did not report right-shoulder pain specifically—only referencing "body aches" and feeling "sick." *Id.* at 14–15 (citing Pet'r's Ex. 12 at 17). Petitioner reported achiness in her right arm on December 7, 2021, but Respondent explains she still did not reference the vaccine and "instead suspected it was due to Lyme [d]isease." *Id.* at 15. Moreover, even when Petitioner attended her first visit for shoulder pain on December 18, 2021, Respondent calculated Petitioner's reported onset date as approximately November 6, 2021.[11] *Id.*

Respondent next questions the legitimacy of Petitioner's communications with counsel, which Petitioner uses to support her 48-hour onset claim. Resp't's Response at 16 (citing Pet'r's Ex. 13). Respondent acknowledges the "Created" date of the document as December 21, 2021. *Id.* However, Respondent notes the uncertainty surrounding the author of the document, the actual date of creation, and whether any information had been amended by the author. *Id.* Respondent

[11] During the December 18, 2021, visit with PA Leahy, Petitioner reported her shoulder pain as present for "six weeks." Resp't's Response at 15.

argues that even if Petitioner could prove the document's legitimacy, the document still does not establish the exact date of onset, nor Petitioner's specific symptoms at onset.[12] *Id.* Respondent further claims the document contradicts PA Leahy's records of Petitioner's visit on December 18, 2021. *Id.* at 16–17. In that visit, Petitioner "denied any trauma, particular injury, or provocative activity" to explain her pain. *Id.* (citing Pet'r's Ex. 2 at 120). In the communications to counsel, however, Petitioner described a conversation with PA Leahy about the vaccine as a potential cause of symptoms. *Id.* (citing Pet'r's Exs. 2, 13). Respondent asserts generally that "statements that may have been offered for the purposes of litigation should be given less weight." *Id.* at 17–18 (citing *Vashro v. HHS*, 2023 WL 6643108, at *3 (Fed. Cl. Sept. 5, 2023)).

Respondent addresses the two documents Petitioner cites to support her 48-hour onset claim: PA Leahy's March 25, 2022 insurance documents, and the March 9, 2022 Southboro Rehabilitation records. Resp't's Response at 17. Respondent concedes that the Southboro records state that Petitioner's pain "began after her flu vaccine." *Id.* (citing Pet'r's Ex. 2 at 102). However, he asserts that Petitioner still reported the specific onset date as "six weeks prior to her December 18, 2021 visit with PA Leahy" in that same record. *Id.* Respondent theorizes that Petitioner "likely believed" the vaccine caused her shoulder pain but "reiterated the same onset date she provided to PA Leahy" during her Southboro appointment. *Id.* Moreover, Respondent argues that the onset date of "October 2021 after a flu shot" still does not place the onset within 48 hours, as required by the Table. *Id.* Respondent also concedes that PA Leahy's insurance documents list "October 2021" as the "approximate date condition commenced." *Id.* (citing Pet'r's Ex. 8 at 177). However, Respondent argues that when PA Leahy interacted with Petitioner in-office that day, his notes did not include any reference to "onset or vaccination." *Id.*

Respondent also discredits Petitioner's declaration as written "almost two years after the subject vaccination." Resp't's Response at 18. Respondent requests for the Court to give Petitioner's declaration little weight, due to its age and its purpose for litigation. *Id.* at 18–19. Moreover, Respondent identifies discrepancies between Petitioner's declaration and Petitioner's medical records. *Id.* at 18. For example, the declaration states that Petitioner called her PCP on October 19, 2021, but Respondent notes that "no such call is documented in the clinical record." *Id.* The declaration also describes that Petitioner could no longer dress herself within six weeks of the vaccination, but Respondent notes that on December 7, 2021, Petitioner did not describe an inability "to provide for her own daily needs" when calling her PCP. *Id.* at 17–18.

Respondent generally concedes that Petitioner accurately reported pain "six weeks prior to her December 18, 2021 encounter." Resp't's Response at 19. However, Respondent argues that Petitioner provided insufficient evidence that her pain occurred within 48 hours of the vaccination. *Id.* Although her declaration describes immediate pain, Respondent asserts that her medical records are "more reliable than her [d]eclaration" because the declaration was created for litigation. *Id.*

**b. Additional Medical Conditions**

Respondent also claims that "[a]nother condition or abnormality is present" in this case.

[12] *See* Resp't's Response at 16 (arguing that that Petitioner's document vaguely refers to discomfort "right to follow" the vaccination) (citing Pet'r's Ex. 13 at 1).

Resp't's Response at 20. Although Respondent concedes that "[P]etitioner may not have Lyme [d]isease," he notes that Petitioner underwent an X-ray revealing "erosions . . . seen in inflammatory arthritis" in her right shoulder. *Id.* Respondent also cites to Petitioner's frequent complaints of "generalized joint pain," for which both Petitioner and her PCP have considered chronic Lyme disease as a possible etiology. *Id.*

Lastly, Respondent disputes that Petitioner's COVID exemption letter demonstrates causation. Resp't's Response at 21. Respondent explains that Petitioner's PCP never "otherwise commented that [P]etitioner's shoulder issue was caused by the flu vaccine." *Id.* He theorizes that the letter "appear[s] to be based only on [P]etitioner's report" of an association. *Id.* Respondent characterizes records from July 9, 2024, in a similar manner. *Id.* On that date, Petitioner requested documents from her PCP, who noted, "I [sic] this is secondary to issues around frozen shoulder that she developed after vaccination in 2021." *Id.* (citing Pet'r's Ex. 10 at 24). Respondent asserts that Dr. Spanagel "never assessed Petitioner with 'frozen shoulder,'" supporting his theory that the PCP based her documentation on Petitioner's self-reporting only. *Id.*

Respondent does not contest the six-month severity requirement in this case.

## V. Applicable Legal Standard

The Vaccine Act provides petitioners with two avenues to receive compensation for their injuries resulting from vaccines or their administration. First, a petitioner may demonstrate that she suffered a "Table" injury—i.e., an injury listed on the Vaccine Injury Table that occurred within the provided time period. § 11(c)(1)(C)(i). "In such a case, causation is presumed." *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006); § 13(a)(1)(B).

The Vaccine Injury Table lists a Shoulder Injury Related to Vaccine Administration or "SIRVA" as a compensable injury if it occurs within 48 hours of administration of a vaccination. § 300aa-14(a) as amended by 42 CFR § 100.3. Table injury cases are guided by statutory "Qualifications and Aids in Interpretation" ("QAIs"), which provide more detailed explanation of what should be considered when determining whether a petitioner has actually suffered an injury listed on the Vaccine Injury Table. *See* 42 CFR § 100.3(c). To be considered a "Table SIRVA," a petitioner must show that her injury fits within the following definition:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis . . . . A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs,

> symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 CFR §100.3(c)(10).

Alternatively, if a petitioner is unable to establish a Table claim, she may bring an "off-Table" claim. § 11(c)(1)(C)(ii). An "off-Table," or causation-in-fact, claim requires that the petitioner "prove by a preponderance of the evidence that the vaccine at issue caused the injury." *Capizzano*, 440 F.3d at 1320; *see* § 300aa-13(a)(1)(A); *see* § 11(c)(1)(C)(ii)(II). A petitioner must show that the vaccine was "not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Hum. Servs.*, 165 F.3d 1344, 1352–53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Hum. Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006) (citations omitted).

In Program cases, contemporaneous medical records and the opinions of treating physicians are favored. *Capizzano*, 440 F.3d at 1326 (citing *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1280 (Fed. Cir. 2005)). Indeed, when reviewing the record, a special master must consider the opinions of treating physicians. *Id.* This is because "treating physicians are likely to be in the best position to determine whether 'a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury.'" *Id.* (quoting *Althen*, 418 F.3d at 1280). In addition, "[m]edical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). While a special master must consider these opinions and records, they are not "binding on the special master or court." § 300aa-13(b)(1). Rather, when "evaluating the weight to be afforded to any such . . . [evidence], the special master . . . shall consider the entire record . . . ." *Id.*

## VI. Analysis

Petitioner averred in her petition, filed July 31, 2023, that she suffered from "right shoulder injuries related to vaccine administration ("SIRVA"), a 'Table' injury, resulting from the [flu] vaccination, which is contained on the Vaccine Injury Table, 42 C.F.R. 100.3(a) XIV (2017), received on October 19, 2021." Pet. at 1. Petitioner reiterated her claim in her Motion for a Ruling on the Record, wherein she "respectfully move[d] this Court for a ruling on the record that Petitioner suffered a right shoulder Table SIRVA as a result of the [flu] vaccination she received

on October 19, 2021." Pet'r's Mot. at 12. There is no off-Table claim asserted, and Petitioner has presented no evidence or argument to consider meeting the standard set forth in *Althen* for but-for causation.

The parties agree that Petitioner has presented preponderant evidence that she received a flu vaccine on October 19, 2021, in her right shoulder. Petitioner contends that she meets all of the QAIs for a Table SIRVA. Respondent does not dispute that Petitioner satisfied the first and third criteria but argues that there is insufficient evidence to meet the second and fourth. A thorough review of the record does not reveal another condition or abnormality that would explain Petitioner's symptoms. However, the same record likewise does not include preponderant evidence that Petitioner suffered her shoulder injury within 48 hours of vaccination, as required by the second QAI.

**A. 48-Hour Symptom Onset**

In asserting that she has provided preponderant evidence of a 48-hour onset of shoulder pain symptoms following her flu vaccination, Petitioner does not rely primarily on her medical records; in fact, she disputes what would normally be the most probative type of evidence. Petitioner contested the accuracy of the notes from a December 18, 2021 medical visit, her first post-vaccination visit. She does not detail the nature of this inaccuracy, only stating generally that the onset date was recorded in error. This is not the only medical record that lacks support for an onset of shoulder symptoms within 48 hours of Petitioner's vaccination, however.

Petitioner called her PCP the day after her vaccination and reported a reaction. Pet'r's Ex. 12 at 17. She described feeling "sick," with specific complaints of "[w]heezing and [b]ody [a]ches." *Id.* At this time, Petitioner requested time off from work and exemption from future flu vaccines, explaining that she had experienced the same symptoms when she had received the flu vaccine the prior year. *Id.* The note from this call did not document any complaint of shoulder pain as a reemerging or new symptom.

During a December 7, 2021 call, Petitioner complained of all-over body aches, "especially in her right arm." Pet'r's Ex. 12 at 20. Although she noted joint pain, again Petitioner did not describe shoulder pain generally or right-shoulder pain specifically. Indeed, when Petitioner did first complain of shoulder pain, on December 18, 2021, she placed onset at six weeks prior or approximately November 6, 2021. Pet'r's Ex. 2 at 120. As noted, Petitioner contests the accuracy of this record and instead referenced an undated note that appears to be an internal litigation document from her counsel. This document, titled Treatment Summary, does not provide specific descriptions of Petitioner's symptoms. There is a general characterization of discomfort immediately following her vaccination that was "pretty uncomfortable painful and ongoing." Pet'r's Ex. 13 at 1.

Petitioner also cites her initial PT evaluation, dated March 9, 2022, during which she stated that her right shoulder pain began in October 2021, after a flu shot. Pet'r's Ex. 2 at 102. As Respondent noted, that records states, "[d]ate of onset: October 2021 after a flu shot[.] [P]atient [s]aw [PA] Leahy for right shoulder pain in mid Dec[ember] 2021. She had had it for about [six] weeks at that time without injury." *Id.* at 67. Another March of 2022 record from PA Leahy's

office listed the "approximate date condition commenced" as October 2021. *Id.* at 54. Even if these notations are accurate,[13] this record does not provide evidence that Petitioner's symptom onset occurred with 48 hours of vaccination, only that her symptoms occurred sometime within the month of vaccination from October 18–31, 2021.

The most detailed accounting of her symptom onset and progression that Petitioner offers in support of her Table claim is her declaration. Petitioner described "pain and [] throbbing at the injection site," shortness of breath, and stated she used her inhaler to control wheezing. Pet'r's Ex. 6 at ¶ 4. Petitioner recalled speaking to the doctor via phone about her symptoms, but the medical records do not include any complaints of shoulder pain necessitating pain medication or cold compresses. Petitioner's declaration goes on to describe how she continued to have soreness over her injection site and "then began noting an increased pressure feeling over the area." *Id.* at ¶ 5. Petitioner reasoned that the delay in treatment was due to her hesitation to seek treatment unless absolutely necessary; however, that does not explain why Petitioner did not complain of shoulder pain during her treater calls in October and early December. Petitioner stated that within six weeks of vaccination, approximately November 29, 2021, "the pain was so bad [she] couldn't sleep . . . lift [her] arm or even touch the area . . .[,] needed assistance dressing, . . . [and] couldn't wash" her face, shower, or brush teeth without pain. *Id.* at ¶ 10.

Despite Petitioner's intense pain, her concern that this was vaccine-related, her experience in the medical field, and her access to medical professionals at work and through telehealth, she did not seek treatment until she made an appointment with an urgent care orthopedic specialist (PA Leahy) and was seen on December 18, 2021, two months after her injection. And it is this appointment record that she asserts has the wrong recorded onset date. Petitioner points to references in the record to symptoms that start in October of 2021; however, these records are often nonspecific or were created months to years post vaccination. Therefore, they would generally be afforded less weight than more contemporaneous records. There are instances wherein the accuracy of a medical record is credibly undermined. Here, however, the evidence that Petitioner's symptoms began outside of a 48-hour post vaccination window articulated in the QAIs is not limited to one medical record. After consideration of the entire record, there is not preponderant evidence that Petitioner's symptoms began within the specific timeframe for a Table SIRVA.

### B. Lack of Alternative Condition

Respondent acknowledges that "[P]etitioner may not have Lyme [d]isease," but asserts that Petitioner exhibited symptoms consistent with inflammatory arthritis and "also frequently complained about generalized joint pain, and it does not appear that an etiology for those symptoms has been identified." Resp't's Response at 20. Although Petitioner did complain of other symptoms, there is not preponderant evidence that Petitioner or her treaters continued to suspect any other specific etiology for her shoulder pain. There were other potential conditions that Petitioner may have suffered from, and it is reasonable that Petitioner and her treaters may have

[13] There are two onset dates that Petitioner has provided to her treaters: approximately November 6, 2021—"six weeks" prior to her December 18, 2021, visit with PA Leahy, and "October 2021," noted in Petitioner's March 9, 2022, and March 25, 2022, records. *See* Pet'r's Ex. 2 at 67, 102, 120 (describing six weeks of shoulder pain before December 18, 2021); Pet'r's Ex. 2 at 102 (also noting "October 2021" as symptom onset date); Pet'r's Ex. 8 at 177 (noting "October 2021" as condition onset date).

considered alternatives, given the rare occurrence of true vaccine injury. While it is possible that additional analysis by an expert may have better accounted for Petitioner's seemingly unrelated symptoms, as the record stands, Petitioner's complaints of joint pain did not culminate in an inflammatory arthritis diagnosis, nor was there confirmation of a neurological process. As such, Petitioner's evidentiary record does not contain preponderant evidence that she suffered from another condition to explain her right shoulder symptoms.

## VII. Conclusion

Table claims carry a presumption because they are unhindered by previous similar injury, additional symptoms indicative or other conditions, and timing concerns. They are streamlined, and they often resolve without medical expert reports or opinions to rule out other diagnoses. In cases where other issues are present, cases proceed more deliberately. It is Petitioner's burden to overcome those complications using the parameters set forth in *Althen*. While Petitioner presented evidence in accordance with QAIs 1, 3, and 4, Petitioner did not provide preponderant evidence that her injury developed within 48 hours of vaccination as required by QAI 2. Therefore, Petitioner has not presented preponderant evidence that she suffered from a Table SIRVA and is not entitled to compensation. Accordingly, her claim must be **DISMISSED**.[14]

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master

[14] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.